**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:                                                                                                   CHAPTER 11

DRESSED 4 DRINKS, LLC
d/b/a Skybar Lexington                                                                      CASE NO. 11-50889

DEBTOR

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
## USE OF CASH COLLATERAL FROM TRADITIONAL BANK

Comes Dressed 4 Drinks, LLC, d/b/a Skybar Lexington, as Debtor and Debtor-in-Possession in the above-referenced Chapter 11 bankruptcy case (hereinafter, the "Debtor"), and hereby moves the Court for interim and final orders, pursuant to 11 U.S.C. Section 363(c) approving the Debtor's use of Traditional Bank's cash collateral, as further described herein, and to authorize the Debtor to make adequate protection payments to Traditional Bank (hereinafter, the "Bank").  In support of this Motion, the Debtor states, as follows:

1.      On March 25, 2011, the Debtor filed its voluntary bankruptcy petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is operating its business as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. Section 1334.  This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A).  The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. Section 157(b)(1).  Venue of this case and this Motion is proper in this district pursuant to 28 U.S.C. Sections 1408 and 1409.  No

request has been made for the appointment of a trustee or examiner, and no committee has been appointed in this case.

### Debtor's Background

3. The Debtor is a Kentucky limited liability corporation with headquarters in Lexington, Kentucky. The Debtor operates a restaurant and bar located at the penthouse level of 269 W. Main Street, Lexington, Kentucky. The Debtor presently employs approximately 20 to 25 employees as waiters, waitresses, cooks, bartenders, hostestes and operation supervisors. The Debtor's operations have been profitable during 2010 with a Net Income of $135,780.98 as of December 31, 2010. However, the Debtor's financial difficulties arose due to a six (6) month delay in the anticipated opening of its business and huge cost-overruns, all caused by (1) a delay in obtaining the neccessary liquor, wine and beer licenses and (2) problems with the conversion of the business premises from office space to a restaurant/bar facility. Affiant believes that the Debtor's long-term viability as a restaurant/bar is positive.

4. As set forth in more detail by the Affidavit of Vince J. Carlucci, the Debtor obtained an SBA loan through Traditional Bank to finance its business operations. There is approximately $153,000 owed to the Bank on two promissory notes, both secured by a first and prior lien upon all assets fo the Debtor, including the Debtor's inventory of food, beverages, alcohol and chemical/paper consumables (hereinafter, collectively, the "Inventory"); a copy of the UCC-1 financing statement filed with the Kentucky Secretary of State is attached hereto as Exhibit A. Mr. Carlucci also guaranteed the Bank's loan and pledged as additional collateral his personal residence and several vehicles owned by him and/or VJC Ventures, LLC, a Kentucky limited liability company. The Debtor believes that the estimated cost of the Inventory is approximately $20,000.00. The Bank is further secured by the furniture & fixtures, restaurant

equipment and cash in the Debtor's accounts maintained at the Bank. The Debtor values the non-Inventory assets at $210,000.

5. The Debtor's filing of its Chapter 11 bankruptcy on Friday evening, March 25, 2011 was an emergency. The Debtor faced closure of its operations on Monday, March 28, 2011 by the Franklin Circuit Court due to a motion by the Kentucky Finance and Administration Cabinet (the "KFAC") in Case No. 10-CI-1691. If the KFAC had obtained such order of the Franklin Circuit Court, and if the Debtor had not filed this bankruptcy case, the Debtor's business operations would have ceased, and all going concern value would be lost. Further, the Debtor was in jepordy of losing its lease with 271 West Main Street, LLC (the "Landlord") due to substantial lease arrearages in excess of $57,000. Although the Landlord had not given notice of intent to terminate the Debtor's lease, the Debtor believes such notice was forthcoming.

6. The Debtor has composite assets valued at approximately $250,000. The only secured creditor other than the Bank is Insurance Finance Corporation who financed the Debtor's general liablity and casualty policy with Century Surety Company. Priority unsecured claims are approximately $162,000 and non-priority unsecured claims are approximately $670,000.

Relief Requested

7. To the extend that the Bank claims an interest in Cash Collateral, the Debtor request the authority to use the Cash Collateral on an interim basis and for this Court to set a final hearing for continued cash use and approve a permanent cash collateral order mentioned hereinafter. As used herein, "Cash Collateral" shall mean (i) all cash, negotiable instruments, deposit accounts or other cash equivalents derived from any secured creditor's collateral; and (ii) proceeds, rents or profits of any secured creditor's collateral, including without limitation, all amounts generated by the Debtor's operations, both pre-petition and post-petition, and received

by the Debtor.

8. The Debtor's use of the Cash Collateral is essential to continue the business operations during this Chapter 11 bankruptcy case and to ensure a continued going concern value of its operations to maximize the recovery to all creditors. Without the use of Cash Collateral as a means of working capital, the Debtor cannot meet its ongoing obligations incurred in the ordinary course of business. In short, the Debtor is unable to operate without the use of Cash Collateral. Entry of the Interim Order is necessary to avoid immediate and irreparable harm to the Debtor's operations, its creditors and other parties-in-interest.

9. Code Section 363(c) provides that a debtor "may not use, sell or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

10. As adequate protection for the Bank's lien upon the Inventory, the Debtor proposes that the Court grant a replacement lien in the post-petition Inventory of the Debtor generated by the Debtor's post-petition operations. As further adequate protection, the Debtor shall continue to account for all cash use and the proposed cash use being incurred, and to preserve the property of the Debtor's estate. Finally, the Debtor proposed to continue its usual monthly payments to the Bank during the pendency of this Chapter 11 case. The Debtor requests that the Court grant the relief sought herein effective as of the Petition Date of March 25, 2011.

11. Notice of this Motion and the hearing therein has been given by e-mail to Will Clark, an officer of the Bank, and to Gregory Pavey, one of the usual attorneys for the Bank.[1]

---

[1] Mr. Pavey advised Counsel by telephone on March 28 that he has not been formally assigned this case from Traditional Bank, and therefore, could not begin any negotiations.

The Certificate of Service of this Motion also describes the service of this Motion upon other parties-in-interest.  The Debtor believes that entry of interim and final cash collateral orders are in the best interest of the Debtor, its estate and the creditors, and does not prejudice the rights of any party-in-interest in this case.

WHEREFORE, the Debtor respectfully requests the Court to enter an Order approving an interim order authorizing the Debtor to use the Bank's cash collateral, to grant a replacement lien upon the Inventory of the Debtor, to authorize the Debtor to continue its regular monthly payments to the Bank, and for all other relief to which the Debtor may appear entitled.

**NOTICE** is hereby given that the Debtor will bring this Motion on for expedited hearing on Wednesday, March 30, 2011 at 9:30 a.m., prevailing time, in the U.S. Bankruptcy Court, Third Floor Courtroom, 100 East Vine Street, Lexington, Kentucky.

BUNCH & BROCK

By:     /s/ W. Thomas Bunch II
**W. THOMAS BUNCH II**
271 West Short Street, Suite 805
P. O. Box 2086
Lexington, Kentucky 40588-2086
(859) 254-5522
ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

      This is to certify that this Motion was served electronically in the method established under CM/ECF Administrative Procedures Manual and the Local Court Standing Order dated July 25, 2002, and the following parties by e-mail on March 28, 2011 at approximately 11:55 p.m.:

The Master Service List, including:

Traditional Bank
Attn: Will Clark, Officer
49 W. Main Street
Mt. Sterling, KY 40353
Service via e-mail: wclark@traditionalbank.com


          /s/ W. Thomas Bunch II
          W. THOMAS BUNCH II